## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | |
|---|---|
| **INNOVATIVE GLOBAL SYSTEMS LLC,** | |
| **Plaintiff,** | |
| **v.** | Civil Action File No. 6:09cv00157 |
| **TURNPIKE GLOBAL TECHOLOGIES L.L.C., CADEC GLOBAL, INC., XATA CORPORATION, GENERAL ELECTRIC COMPANY, TRIMBLE NAVIGATION, Ltd. and NETWORKFLEET, Inc.,** | JUDGE DAVIS<br><br>JURY TRIAL REQUESTED |
| **Defendants.** | |

### DEFENDANT NETWORKFLEET INC.'S
### MOTION TO SEVER AND TRANSFER VENUE

Defendant NetworkFleet has no office in the Eastern District of Texas; neither does Plaintiff Innovative Global Systems, LLC ("Innovative Global").   No identified witnesses reside in the Eastern District of Texas.  No known evidence is located within this venue.  Instead, the vast majority of the identified witnesses, evidence and events leading to this case involve the Southern District of California, where NetworkFleet is located.  Nor has Innovative Global alleged any join activity between any the defendants. Therefore, even if some of the defendant companies have contacts with the Eastern District of Texas, those contacts are irrelevant to NetworkFleet.  Accordingly, the Court should grant NetworkFleet's motion to sever the claim against it under Fed. R. Civ. P. 21 and order that the claim against NetworkFleet be transferred to the Southern District of California.

- 1 -

## I.    FACTUAL BACKGROUND

### A. The Parties

Innovative Global is a South Carolina company with its principal place of business in Rock Hill, South Carolina.  Complaint [Dkt. 1] at ¶ 1.  Innovative Global has no connection to the Eastern District of Texas.  It has no offices in or near Texas.  The patents have gone through a torturous transfer of ownership through a confusing web of companies associated with Innovative Global: Vehicle Enhancement Systems, Inc. (renamed Power Talk, Inc.), and Ves-Tek, Inc. (renamed Vehicle Enhancement Systems, Inc.).  Although the details of the transfer are not relevant, it is significant that each of these companies is a South Carolina company with its principal place of business in South Carolina. *See,* Exhibit 1.  It appears that none of these companies has an office in the Eastern District of Texas.  No witnesses for Innovative Global reside in Texas and no known documentary or physical evidence is located in the Eastern District of Texas.

NetworkFleet is a leader in remote vehicle diagnostics, including an integrated GPS tracking and diagnostic monitoring system for wireless vehicle management.  NetworkFleet is a Delaware corporation, with its principal place of business in San Diego, California, just 12 miles from the Southern District of California courthouse. *See,* Exhibits 2, 3, and 4 at ¶¶ 3, 4.  Besides being headquartered in San Diego, California, all of NetworkFleet's operations are in the Southern District of California. *See,* Exhibit 4.  The accused products were developed in San Diego, California and NetworkFleet's witnesses and evidence are located in California. *See,* Exhibit 4.

**B. The Witnesses and the Evidence**

Innovative Global Systems, LLC ("Innovative Global") alleges that NetworkFleet infringes U.S. Patent Nos. 6,411,203 ("the '203 patent"), 6,608,554 ("the '554 patent"), 6,744,352 ("the '352 patent"), 7,015,800 ("the '800 patent"), and 7,449,993 ("the '993 patent") (collectively the "patents-in-suit") when it makes, uses, and sells its 3500 Product Line. Complaint [Dkt. 1] at ¶¶ 18, 24. The accused 3500 Product Line is used for remote vehicle diagnostics. Innovative Global does not allege that defendants are jointly and severally liable or that there is any relationship between NetworkFleet and the other defendants.

The vast majority of evidence relevant to the development, use, marketing, and sale of the accused products will be discovered through witnesses and documents located in California. NetworkFleet developed the accused 3500 Product Line at its facilities in Southern California. Various individuals at NetworkFleet's Southern California facilities have knowledge regarding the development of the accused 3500 Product Line, including:

      Diego A Borrego – Vice President of Product Engineering;

      Alan Wettig – Hardware/Firmware Engineer;

      Tomás Escalante – Field Applications Engineering Manager;

      Steve Loudon – Engineering Development Manager; and

      David Avila – Firmware Engineer.

Additionally, individuals knowledgeable about the sales of those products also work at NetworkFleet's San Diego offices. *See,* Exhibit 4 at ¶ 11. These individuals

include Tamara Chamberlin, Vice President of Sales.  NetworkFleet also maintains all official records regarding the 3500 Product Line – including lab notebooks, schematics, sales records, and marketing materials – in San Diego, California.  *See,* Exhibit 4 at ¶ 7.

Non-party witnesses with knowledge of the accused products are also located in California.  For example, a number of external consultants and former NetworkFleet employees who worked to develop the 3500 Product Line reside in the Southern District of California. Those external consultants include:

Bruce Lightner – Engineering consultant;

Mark Hunt – Engineering consultant; and

Mario Rosales – Former Employee.

Innovative Global's witnesses, including the inventors, will be located in South Carolina, where the company maintains its business.  The first named inventor of the patents-in-suit, Alan C. Lesesky, is president of Innovative Global, Vehicle Enhancement Systems, LLC, and Power Talk, Inc. Mr. Lesesky resides in North Carolina. *See,* Exhibit 5.  Bobby Weant, the other named inventor of the patents-in-suit, resides in South Carolina. *See,* Exhibit 5.  To the extent employees of Innovative Global are knowledgeable regarding the subject matter claimed by the patents, Innovative Global has not asserted that any such employees are located in Texas. Similarly, because Innovative Global has no offices in the Eastern District of Texas, it presumably has no documentation regarding the patents-in-suit located in the Eastern

District of Texas.  Indeed, defendants have identified <u>no</u> sources of evidence related to the patents-in-suit that are located in the Eastern District of Texas.

Third party witnesses may include the attorneys involved in prosecuting the patents-in-suit.  Neither of these attorneys are located in the Eastern District of Texas. The attorney of record at the U.S. Patent and Trademark Office responsible for the '800 patent and the '993 patent, Jeffrey Schwartz is located in North Carolina.  The only possible connection with Texas is the attorney of record at the U.S. Patent and Trademark Office responsible for the '203 patent, the '554 patent, and the '352 patent, Jeffrey S. Whittle, who appears to be located in Houston, Texas, the Southern District of Texas.  To the extent these individuals have retained records relating to the patents-in-suit, those records are also likely to be located in North Carolina and in the Southern District of Texas, not the Eastern District of Texas.

**III. ARGUMENT**

**A. Innovative Global's Claims Should be Severed**

Asserting the same patent against multiple defendants does not entitle a patentee to join all alleged infringers in one action.

> All persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a) (emphasis added).[1]  A court has broad discretion to sever cases. "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just."  Fed. R. Civ. P. 21.

Joinder of NetworkFleet as a defendant in this action violates Rule 20(a) because Innovative Global's claim against NetworkFleet does not arise out of the same transaction or occurrence as Innovative Global's claims against the other defendants. Innovative Global alleges that each of the defendants infringe the '341 patent by making, using, and/or selling separate products.  NetworkFleet has no relationship with the other defendants.  Further, Innovative Global has not alleged any relationship or conspiracy among the defendants.

Joinder of unrelated defendants in such circumstances is improper.  "Separate companies that independently design, manufacture and sell different products in competition with each other," may not properly by joined as co-defendants in a single action for patent infringement. *Androphy v. Smith & Nephew, Inc.*, 31 F. Supp. 2d 620, 623 (N.D. Ill. 1998); *New Jersey Machine Inc. v. Alford Industries, Inc.*, 1991 WL 340196, at *2 (D. N.J. Oct. 7, 1991), *aff'd*, 983 F.2d 1037 (Fed. Cir. 1992); *Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 564 F. Supp. 1358, 1371 (D. Del. 1983).  Thus, because joinder of NetworkFleet violates Rule 20(a), the Court should sever the claims against NetworkFleet.

---

[1] Rule 20(a) also allows joinder when there is joint and several liability; however, Innovative Global has never alleged that any of the defendants are jointly and severally liable.

**B. The Claims Against NetworkFleet Should Be Transferred to the Southern District of California**

The Southern District of California is the most convenient forum for this action based on the public and private interest factors. Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A court should grant a motion to transfer venue if the claim could have been filed in the judicial district to which transfer is sought and that district is clearly more convenient than the venue chosen by the plaintiff. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"); *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam) ("*Volkswagen I*").

In determining the relative convenience of two venues, the Fifth Circuit considers the *forum non conveniens* "private" and "public" interest factors. *In re TS Tech Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (citing *Volkswagen II*, 545 F.3d at 314 n.9). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious and inexpensive." *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws [or in] the application of

foreign law." Id. at *2 (quoting *Volkswagen II*, 545 F.3d at 315). The plaintiff's choice of venue is not treated as a distinct factor in the § 1404(a) analysis. *TS Tech* at 1319.

The Federal Circuit has recently provided further guidance with respect to the consideration of the so-called private and public interest factors in the context of motions to transfer patent infringement cases. *See In re Genentech, Inc. and Biogen Idec Inc.,* --- F.3d ---, 2009 U.S. App. LEXIS 10882 (Fed. Cir. May. 22, 2009); *In re TS Tech Corp.,* 551 F.3d 1315 (Fed. Cir. 2008). In *TS Tech,* the Federal Circuit held, *inter alia,* that sales of an allegedly infringing product in a district is an insufficient basis on which to deny a motion to transfer venue to a forum in which a party resides and witnesses or evidence may be found. *TS Tech* at 1321. In *Genentech,* the Federal Circuit held that the "central location" rationale is an insufficient basis on which to deny a motion to transfer venue to a forum in which a substantial number of material witnesses and evidence are located. *Genentech* at 12-16.

As demonstrated further below, the same reasoning for transfer applies here. The allegedly infringing 3500 Product Line is sold nationwide and, as a result, some sales of those products occur in this District—those sales constitute the only link between this litigation and the Eastern District of Texas. Furthermore, the substantial bulk of witnesses and evidence all reside in the Southern District of California. Analysis of the private and public interest factors weighs in favor of transferring this case to a more convenient forum in which a party resides, and in which numerous witnesses and substantial evidence may be found. Accordingly, Defendant's motion to transfer this action to the Southern District of California should be granted.

### 1. This Action "Might Have Been Brought" in the Southern District of California.

As required by section 1404(a), this action could have been brought in the Southern District of California. In a patent infringement action, venue is proper in "a judicial district where any defendant resides, if all defendants reside in the same State." 28 U.S.C. §§ 1391(b)(1), 1400(b). NetworkFleet "resides" in the Southern District of California because it has maintained its headquarters in that District since at least 1999 and was thus subject to personal jurisdiction in that District at the time this action was commenced. See 28 U.S.C. § 1391(c).  Accordingly, the Southern District of California is a proper venue for this action.

### 2. The Private Interest Factors Favor Transfer to the Southern District of California.

Each of the relevant "private" interest factors weighs heavily in favor of transferring this case to the Southern District of California. Such a transfer will facilitate access to the primary sources of proof, ensure the voluntary or compelled attendance of non-party witnesses at deposition and trial, and maximize the convenience of all parties and witnesses.

### i. Convenience of the Witnesses and Parties

The Federal Circuit has characterized the convenience of the witnesses and parties an "important factor." *Genentech* at 8.  This factor overwhelmingly favors transfer. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *TS Tech* at 1320

(quoting *Volkswagen I*, 371 F.3d at 204-05). NetworkFleet's witnesses will be inconvenienced if this case stays in the Eastern District of Texas. Moreover, Innovative Global's witnesses already have to travel more than 100 miles. They will only be slighting more inconvenienced if this case is transferred.

As described above, the majority of both party and non-party witnesses with knowledge regarding the accused products and the patents-in-suit reside in the Southern District of California.[2] *See*, Exhibit 4 at ¶¶ 7, 8. There is only one potential witness in this case for whom the Eastern District of Texas would be a more convenient forum than the Southern District of California. Moreover, if the case is transferred to the Southern District of California, most willing witnesses will be able to participate in the proceedings without leaving their home state of California or traveling over-night. Accordingly, for the convenience of the witnesses, Defendant's motion should be granted. *TS Tech* at 1320-1321 (finding the convenience of the witnesses factor weighs in favor of transfer where witnesses live in or near the proposed venue). Finally, there are approximately 8 potential witnesses located in San Diego, whereas there is one potential witness in Houston, Texas and two potential witnesses in North and South Carolina. This factor is not required to weigh in favor of all witnesses. *Genentech* at 14-16. For the convenience of the substantial number of witnesses from California, Defendant's motion should be granted. *Id.* (finding that the convenience of the witnesses factor weighs in favor of transfer where a substantial number of witnesses reside in the transferee venue).

---

[2] Google Maps (http://maps.google.com) indicates that San Diego is located approximately 1,500 miles from Tyler.

Innovative Global cannot argue that the Eastern District of Texas is a more convenient forum for at least two reasons.  First, Innovative Global, by filing this suit, consented to traveling from Rock Hill, South Carolina to Tyler.[3]  Innovative Global is traveling a large distance no matter which venue the case is tried in and will be only slightly more inconvenienced by the case being tried in California.  Second, Innovative Global cannot rely on the supposed "centralized location" of the Eastern District of Texas as a midpoint between West Coast and East Coast witnesses.  A motion to transfer, however, cannot be denied based on the centralized location theory.  The centralized location of a district is insufficient when a substantial number of witnesses are in a transferee forum. *Id.* at 14.

### ii. Availability of Compulsory Process

This factor also weighs in favor of transfer.  Numerous witnesses in this case are located in Southern California, including current and former employees of NetworkFleet who have knowledge regarding the development of the accused 3500 Product Line.  The Southern District of California may compel the attendance of these non-party witnesses at deposition and at trial. Fed. R. Civ. P. 45. When the court to which transfer is sought has subpoena power over witnesses and the court from which transfer is sought does not, the availability of compulsory process to secure the attendance of witnesses for deposition and trial weighs in favor of transfer. *Volkswagen II*, 545 F.3d at 316-317.

Defendants are not aware of a single potential third-party witness within the subpoena power of this District. Accordingly, the parties will be better equipped to

---

[3] Google Maps (http://maps.google.com) indicates that Rock Hill is located approximately 1,000 miles

develop relevant evidence if this case were to proceed in the Southern District of California. *Volkswagen II*, 545 F.3d at 316-317; see *TS Tech*, 551 F.3d at 1320 (requiring transfer even where no weight was accorded to a consideration of whether non-party witnesses were within the subpoena power of two potential forums).

### iii. Access to Evidence

The ease of access to evidence factor weighs heavily in favor of transfer.  When comparing the "relative ease of access to sources of proof" afforded by two potential forums, the location of physical and documentary evidence is the predominant consideration, even when some evidence may be electronically stored and transferred.  *In re TS Tech Corp.*, 551 F.3d at 1320-1321.  "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Neil Bros. Ltd. V. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006) (quotation marks omitted).  It is irrelevant that documents can be electronically stored and transmitted. *Genentech* at 18.

Here, a substantial amount of evidence related to the accused product is located in the Southern District of California; none is located in the Eastern District of Texas. NetworkFleet maintains all of its official corporate records at its headquarters in the Southern District of California.  All documents pertaining to development, manufacturing, and marketing of the accused product are housed in the Southern District of California. *See,* Exhibit 4, at ¶ 7.

---

from Tyler and 2,400 miles from San Diego.

- 12 -

In contrast, no source of relevant evidence is located in the Eastern District of Texas. NetworkFleet does not maintain official records regarding the development, manufacture, or sale of the accused products in this District. Innovative Global has no contacts at all with this district, other than filing the complaint initiating this action. Innovative Global has failed to identify any third-party sources of evidence in this district.

Therefore, the physical evidence is "far more conveniently located near" the Southern District of California. *TS Tech* at 1321. Transporting documents from the Southern District of Texas will "impose a significant burden" on NetworkFleet, while transporting any relevant documents from South Carolina to California will only be "slightly more inconvenient" for Innovative Global. *Genentech* at 24 . Accordingly, this factor weighs decidedly in favor of granting NetworkFleet's motion. The ease of access to sources of proof relevant to the claims and defenses at issue in this action will be maximized if this case is transferred to the Southern District of California.

### 3. The Public Interest Factors Favor Transfer to the Southern District of California.

Each of the relevant public interest factors either weighs in favor of transferring this case to the Southern District of California or may be considered neutral.

### i. Texas Has Little—if Any—Interest in the Subject Matter of this Litigation

The Eastern District of Texas has little interest in "having the case tried locally," where the sale of allegedly infringing products in the District is the only connection

between a patent infringement suit and this District. *TS Tech* at 1321 (citing *Volkswagen II*, 545 F.3d at 318). No other connection ties this case to the Eastern District of Texas. Accordingly, the "substantial interest" factor weighs in favor of transfer.

### ii. The Remaining "Public Interest" Factors Favor Transfer or Are Neutral.

As applied here, the remaining "public interest" factors either favor transfer or are neutral. The most recent Federal Judicial Caseload Statistics indicate that cases in the Southern District of California reach disposition more quickly than cases pending in the Eastern District of Texas. Thus, the Southern District of California's less congested docket favors transfer. The other public interest factors are neutral—both courts are familiar with the substance and application of the federal patent law governing this case, and no conflicts of laws problems need be avoided.

### CONCLUSION

For the foregoing reasons, NetworkFleet's Motion to Transfer to the Southern District of California should be granted.

Dated this 2nd day of July, 2009.

Respectfully submitted,

/s/ Ophelia F. Camiña
Ophelia F. Camiña
Texas Bar No. 03681500
Susman Godfrey, LLP
901 Main Street
Suite 5100
Dallas, Texas  75202-3775
Telephone:  (214) 754-1900
Facsimile:  (214) 754-1933
E-Mail:  ocamina@susmangodfrey.com

OF COUNSEL:
(*Applications for Special Admission pending*)
Lawrence K. Nodine (Trial Counsel)
Georgia Bar No. 545250
nodinel@ballardspahr.com
Robin L. Gentry
Georgia Bar No. 289889
gentryr@ballardspahr.com
Charley F. Brown
Georgia Bar No. 086754
browncf@ballardspahr.com
BALLARD SPAHR ANDREWS
& INGERSOLL, LLP
999 Peachtree Street, Suite 1000
Atlanta, Georgia 30309
Telephone 678-420-9300
Fax 678-420-9301

**ATTORNEYS FOR DEFENDANT,
NETWORKFLEET CORPORATION**

### CERTIFICATE OF CONFERENCE

Counsel for movant and counsel for respondent personally conducted a conference at which there was a substantive discussion of every item presented to the Court in this motion and despite best efforts the counsel have not been able to resolve those matters presented.

/s/ Ophelia F. Camiña
Ophelia F. Camiña

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this, the 2nd day of July, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to counsel for the Plaintiff:

/s/ Ophelia F. Camiña
Ophelia F. Camiña

- 15 -