IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| INNOVATIVE GLOBAL SYSTEMS LLC, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO. 6:09-cv-00157 |
| TURNPIKE GLOBAL TECHNOLOGIES L.L.C., CADEC GLOBAL, INC., XATA CORPORATION, GENERAL ELECTRIC CO., and NETWORKFLEET, INC. | § § § § § § | **JURY TRIAL DEMANDED** |
| Defendants. | § § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT NETWORKFLEET'S MOTION TO SEVER AND TRANSFER VENUE**

Plaintiff INNOVATIVE GLOBAL SYSTEMS, LLC ("IGS") files its Response in Opposition to Defendant NetworkFleet Inc.'s ("NetworkFleet") Motion to Sever and Transfer Venue ("Motion") showing the Court as follows:

## I. SUMMARY OF ARGUMENT

This is a multi-defendant patent case with a national scope. Joinder of all Defendants is proper and IGS' choice of forum is as convenient as possible for the collection of parties and possible third parties that will be involved in this case. NetworkFleet asks that this case be prosecuted in multiple venues, requiring each venue to construe the same claims, address the same or similar validity issues, decide the same affirmative defenses, and likely address similar infringement theories. The relief NetworkFleet seeks flies in the face of judicial economy and raises the likelihood of different courts arriving at different constructions of the same claims and different conclusions regarding the same issues of law and fact. It is therefore not surprising that

this Court and others have rejected similar requests to sever. Such courts have made clear that an interpretation of Rule 20 allowing multiple defendants who make, use, or sell similar products be joined in a single lawsuit is much preferred as the most efficient and economic approach.[1]

Absent severance, this Court's precedent makes clear that transfer is inappropriate. The existing dispute is nationwide in scope with many parties, potential party witnesses, third-party witnesses, and documents dispersed literally across the United States. Contrary to NetworkFleet's assertions, because Defendants' infringing products are in the stream of commerce nationwide, Defendants' infringement is felt nationwide. Transfer to the Southern District of California will undeniably create additional inconvenience to all parties and witnesses involved with the possible exception of only NetworkFleet. The Eastern District, on the other hand, is centrally located within the United States. Venue here spreads the inescapable inconvenience of patent infringement lawsuits amongst all parties and witnesses as evenly as can be expected.

Even if NetworkFleet's request of severance were granted, its request for a transfer of venue should still be denied. Even a suit consisting of only IGS and NetworkFleet would still be nationwide in scope with regard to the location of the parties, the potential party and third-party witnesses, documents, and the effect of infringement. Presently the inconvenience for both parties is roughly equal, given that the Eastern District of Texas is roughly halfway between NetworkFleet's principal place of business in California and IGS's in South Carolina. NetworkFleet seeks to increase IGS's inconvenience by shifting its own travel burden to IGS.

---

[1] Federal Rule of Civil Procedure 20(a) states that joinder of defendants is proper if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." F.R.C.P. 20(a).

Such burden shifting is simply not adequate justification to transfer this case to the Southern District of California.

## II. ARGUMENT AND AUTHORITIES

A. **NetworkFleet Has Not Met Its Burden to Obtain Severance**

    1. **Severance is Not Required**

NetworkFleet's core premise for severance – a *per se* rule stating infringement by differing defendants cannot satisfy Rule 20's "same series of transactions or occurrences"[2] requirement – has been expressly rejected by this Court. In *MyMail, Ltd. vs. America Online, Inc., et al.*, 223 F.R.D. 455, 457 (E.D. Tex. 2004), this Court specifically held that such a rule in a patent case is far too narrow, hypertechnical, and does not recognize the complexities of a patent suit. *Id*. at 457. Similarly, other courts have rejected such a rigid reading of Rule 20 in a patent case. *See e.g.*, *Sprint Communications Company, L.P. v. The Globe.com, Inc., et al.*, 233 F.R.D. 615, (D. Kan. 2006); *see also Sipco, LLC v. Amazon.com,* No. 2:07-cv-0359, 2009 U.S. Dist. LEXIS 54977 (E.D. Tex. June 3, 2009) (rejecting Defendants' attempt to sever in order to transfer under Section 1404(a)). *MyMail* also specifically distinguished or rejected the identical legal authorities NetworkFleet cites in support of its position.[3] *MyMail*, 223 F.R.D. at 457.

Instead of the per se rule posited by NetworkFleet, the Court looks to the state of the suit allegations and record to date to determine whether there is "some connection or logical relationship" sufficient for meeting the Rule 20 threshold. *Id* at 456. Here, as in *MyMail* and *Sprint*, there is certainly a logical relationship among Plaintiff's claims against each of the

---

    [2] "[T]ransaction is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) (internal citation omitted).

    [3] It is interesting that the specific authorities on which NetworkFleet relies (*Androphy v. Smith & Nephew, Inc.*, 31 F. Supp. 2d 620 (N.D. Ill. 1998)*, New Jersey Machine Inc. v. Alford Indus., Inc.,* 1991 U.S. Dist. LEXIS 20376, No. Civ. A. 89 – (JCL) (D. N.J. Oct. 7, 1991),*, and Paine Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 564 F. Supp. 1358 (D. Del. 1983) were specifically addressed in *MyMail,* yet somehow the *MyMail* opinion escaped mention in NetworkFleet's brief.

3

Defendants.  In *each* of its separate allegations as to *each* Defendant, IGS has specifically and identically claimed that Defendants' accused devices are "data communications devices for at least the heavy-duty trucking industry that allow for wireless communications of data associated with a vehicle between the vehicle and remote locations." (Docket No. 1, Complaint, ¶¶ 19-24). Aspects of Defendants products are similar.[4]

Additionally, the Court in *Sprint* held that its plaintiff's claims "arose out of the same transaction or occurrence" because the same patents were asserted against each defendant and because the defendants raised several identical affirmative defenses. *Sprint*, 233 F.R.D. at 617. The same is true here – the patents asserted against each Defendant are identical (Docket No. 1 – Complaint, ¶¶ 18-24) and the Defendants who have answered, including NetworkFleet, have alleged IGS' claims are barred due to laches, equitable estoppel and prosecution history estoppel (Docket No. 28, p.13; Docket No. 18, ¶¶ 31, 32 and 35; Docket No. 26, ¶¶ 31, 32 and 33).

Finally, there is no dispute that the second element of Rule 20 is satisfied – that common questions of law and fact are present.  The scope of the patent claim terms is common as to all Defendants. *MyMail*, 223 F.R.D. at 456.  Moreover, Defendants will almost certainly assert the same, or substantively similar, prior art and, therefore, common invalidity defenses and affirmative defenses will exist.

At a minimum, a severance ruling at this time is premature and should be deferred until discovery is complete.  This Court and others have routinely delayed a decision regarding

---

[4] As in *MyMail*, several of the defendants utilize shared resources.  For example, multiple Defendants (NetworkFleet, XATA, and Cadec) use the same wireless carrier (AT&T) to transmit data between a vehicle and a remote site.  Also, publicly available information indicates that the products of several of the Defendants (NetworkFleet, Cadec, Turnpike Global, XATA) are designed to interface with the J1708 data bus of a vehicle. That more detail has not been alleged to this point is hardly surprising since the case is in the earliest of stages.  In fact, two Defendants have yet to even answer the Complaint.  Obviously, no discovery has occurred and Rule 3-3 infringement contentions have yet to be provided.  Not all Defendants have answered and no requests for discovery have been sent or received by any party, including documents constituting or relating to the manufacture, functionality or specifications of Defendants' products.

severance until fact discovery was complete or at least further along with respect to the similarity in Defendants' products. *MyMail,* 223 F.R.D. at 457; *Sprint*, 233 F.R.D. at 618. As noted in *MyMail*, in some of the cases cited by NetworkFleet as support, the decision to sever was delayed until after fact discovery was complete. *See, e.g.*, *Phillips Elecs. N. Am. Corp. v. Contec Corp.,* 220 F.R.D. 415, 416, 418; *MyMail*, 223 F.R.D. at 457.

### 2. The Court Should Not Exercise Its Discretion to Sever Under Rule 21

The Court may grant a severance under Rule 21 on such terms as are "just." This standard must be examined against a backdrop in which the preference is given to the broadest possible scope of action within reason and in which joinder is permitted. *MyMail*, 223 F.R.D. at 458; *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).

This Court and others have found any number of reasons also present here that would render severance unjust. For example, in a single, common suit the patents will be attributed a singular claim construction, whereas severance will create the prospect of inconsistent claim constructions. This factor alone favors resolving related patent cases in one forum when possible. *Data Treasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 596 (N.D. Tex. 2003); *MyMail*, 223 F.R.D. at 458; *Sprint*, 233 F.R.D. at 618. Any other course creates greater uncertainty about the patent's scope and impedes the administration of justice. *Id.*

Moreover, additional economies exist via a single suit including the same discovery being taken by Defendants from the Plaintiff in one proceeding and discovery rulings as to all parties being handled in a unified, coherent fashion. *MyMail*, 223 F.R.D. at 458.

Additional repercussions also must be examined if severance were allowed for NetworkFleet. What would stop all other Defendants from moving for severance as well? This would require IGS to engage in five separate lawsuits, each with its own set of pleadings,

5

rulings, findings, interpretations of law which are likely to conflict, and perhaps most abusive, five different *Markman* rulings. The practical effect on a larger scale would be that a plaintiff could never join defendants who did not act together in infringing the product. This obviously will crowd *every* Federal District Court's docket unnecessarily in strong contravention of a mandate for judicial economy, as "joinder of claims, parties, and remedies is strongly encouraged." *United Mine Workers of Am. V. Gibbs*, 383 U.S. 715, 724 (1966).

### B. NetworkFleet Has Not Met Its Burden to Show That Venue in California is Clearly More Convenient in the Transferee Court

#### 1. NetworkFleet's Request for Transfer of Venue Should Be Denied

##### a. Introduction

NetworkFleet's motion to transfer assumes that its request for severance will be granted and analyzes the relevant factors solely with respect to IGS and NetworkFleet. But, as described above, NetworkFleet's motion to sever will lead to a multiplicity of suits involving the same issues, and thus should be denied. "The existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice." *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). "…A situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy, and money that §1404(a) was designed to prevent." *Id.* (quoting *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)); see also, *Sipco, LLC,* 2009 LEXIS 54977.

For transfer to be appropriate, NetworkFleet must meet the "heavy burden" and show "good cause" that the proposed new venue is "*clearly* more convenient" than the venue chosen by IGS. *See In Re Volkswagen of America Inc*, 545 F.3d 304, 315 (5th Cir. 2008) (emphasis added). Assuming NetworkFleet's motion to sever is denied, NetworkFleet has clearly failed to

6

meet this burden. All of NetworkFleet's arguments concerning, *inter alia,* the relative convenience of the parties and the location of documents and witnesses are moot because the suit presently involves multiple Defendants, whose principal places of business, important documents and witnesses are located throughout the country. But, even if severance were to be granted, the severed lawsuit is still nationwide in scope due to the location of potential party-related witnesses and third party witnesses, and documents and other evidence, which are still spread throughout the United States.

### b. Applicable Law

The current state of the law with respect to transfers for convenience in a patent dispute is relatively clear with recent cases showing remarkable consistency. The issue turns on whether the dispute is nationwide in scope or instead focused on a localized region outside the transferee venue. The consistency in these outcomes reflects that ordinarily patent cases are nationwide in scope – especially when multiple defendants are geographically dispersed – and as such, no one particular forum can claim to be "clearly" more convenient than another. See, e.g., *Motiva, LLC,* No. 6:08-cv-429, 2009 U.S. Dist. LEXIS 55406 at *11 (E.D. Tex. June 30, 2009); *Novartis Vaccines & Diagnostics v. Hoffman-La Roche*, 597 F. Supp. 2d 706 (E.D. Tex. Feb. 3, 2009); *J2 Global Comm. Inc., v. Protus IP Solutions*, No. 6:08-CV-211, 2008 U.S. Dist. LEXIS 103609 (E.D. Tex. Feb. 19, 2009); *Network-1 Security Solutions, Inc. v. D-Link Corp. and D-Link Systems, Inc.*, 433 F. Supp. 2d 795 (E.D. Tex. Mar. 23, 2006), mandamus denied, 183 Fed. Appx. 967 (Fed. Cir. 2006).

On the other hand, transfer is more likely granted when the dispute is localized in some other region. In *Odom v. Microsoft Corp.*, 596 F. Supp. 2d 995 (E. D. Tex. Jan. 30, 2009) transfer was granted when plaintiff and six of seven defendants were located in California and

most witnesses and documents on the west coast. In *TS Tech*, 551 F.3d 1315 (Fed. Cir. 2008), the Federal Circuit granted transfer when the majority of witnesses, evidence, and events leading to the filing of suit were in Ohio or Michigan as opposed to where the case was initially filed.

The unique nature of patent suits is such that witnesses and evidence are prone to be significantly more dispersed even when the parties are not scattered across the nation. This Court's opinion in *Network-1 Sec. Solutions,* 433 F. Supp. 2d at 802-03 is instructive:

> Witnesses in patent cases are typically more dispersed. There are the inventors who created the patented invention and the attorneys who prosecuted the patent application, who may or may not have ties to the plaintiff. The inventors and designers of the defendant's accused products are also important. Of immense importance, and usually unknown at the beginning of the case, are witnesses with personal knowledge of relevant prior art. Such witnesses are usually not affiliated with either party and have the possible power of proving the plaintiff's patent invalid. There are witnesses relating to sale and distribution of the accused products, which are relevant to damages. Typically, witnesses in patent cases are scattered throughout the country, if not the world. Thus, the importance of witnesses' cost and distance of travel is diluted since, regardless of where the trial is held, it is nearly certain that many witnesses, including third-party witnesses, will need to travel a significant distance.
>
> Documents, prototypes, and witnesses are typically located throughout the country and the world in patent cases. Thus, no forum can be convenient for everyone."

### c.     **The Private Interest Factors Favor Denial of Transfer Motion**

The location of the parties, documents, witnesses, and other evidence in the current dispute is nationwide, not localized in the Southern District of California as NetworkFleet would have this Court believe. Plaintiff is a South Carolina company with its principal place of business in South Carolina, and potential witnesses in South Carolina, North Carolina, and Texas at a minimum.[5] Whether or not NetworkFleet's motion to sever is granted, the weight of the private interest factors favor denying their motion to transfer.

---

[5]    See Exhibit A, Lesesky Decl., ¶¶ 3, 8.

8

### i. *Relative ease of access to sources of proof*

**If Severance is Denied.** There are five current defendants with principal places of business in different states across the map – New York[6], New Hampshire[7], Minnesota[8], Connecticut[9], and California[10], not to mention the Eastern District of Texas.[11] The geographic diversity does not end there, as NetworkFleet is a California company that is owned by Hughes Telematics whose principal place of business is in Georgia, where there is at least one engineer with knowledge of relevant facts.[12] In light of these locations, party witnesses and documents are certain to be scattered throughout the country in South Carolina, North Carolina, Texas, New York, New Hampshire, Minnesota, Connecticut, California, and Georgia *at a minimum*.

Thus, if NetworkFleet's motion to sever is denied, NetworkFleet's arguments that the Southern District of California is more convenient for the Defendants' fall flat. Because there is such a geographic spread of Defendants here, no one venue is clearly more favorable than any other. Instead, the central location of Texas is as convenient as anywhere else for all parties involved, party witnesses, potential third party witnesses, documents, and other evidence. While venue here in the Eastern District provides a central location for all parties to evenly share the burdens of travel and long-distance production of documents and evidence as much as possible, transfer to California would, to the contrary, *increase* the inconvenience to all parties involved save for NetworkFleet. At this early stage of the litigation it is unclear which issues will be most

---

[6] See Docket No. 18, ¶ 2. (Turnpike Global admitting its principal place of business is in New York).
[7] See Docket No. 26, ¶ 3. (Cadec admitting its principal place of business is in New Hampshire).
[8] See Exhibit B, Minnesota Secretary of State printout showing registered office of XATA in Minnesota.
[9] See Exhibit C, New York State Department of State printout showing main address of GE in Connecticut.
[10] See Docket No. 31, Page 7. (NetworkFleet stating its principal place of business is in California).
[11] A relevant subsidiary of GE's – GE Equipment Services, Inc. – is located in Plano, which is within the Eastern District of Texas. IGS has accused, among others, GE's Fleetview product. (Docket No. 1, ¶ 22). Fleetview was originally a product of Terion, but GE acquired Terion in 2007. Terion's office was in Plano, Texas and GE Equipment Services, Inc. now operates at the former Terion's address. (See Exhibits D and E).
[12] See Exhibit A, Lesesky Decl., ¶ 10.

relevant or which documents and evidence will be requested from all the participating parties, so transfer now from a centrally located venue to a west coast one is at the very least premature.

**If Severance is Granted.**  Even if NetworkFleet's motion to sever is granted, the Southern District of California is still much more inconvenient for IGS than the Eastern District of Texas.[13]  IGS is a longstanding company developing products in the on-board telematics field as well as other vehicle related products.  Therefore, in addition to its own party witnesses, IGS is likely to have numerous records, license agreements, products, and prototypes which would be discoverable located in its South Carolina offices.[14]  This is in stark contrast to a non-practicing entity that simply has the patent files and any prior acquisition or licensing documents.

In addition to the party witnesses and evidentiary documents, as the *Network-1* opinion points out, additional third party witnesses such as prior art witnesses, witnesses for sale and distribution of the accused products, experts on infringement, damages, and other possible matters, as well as other types of discovery that may be required are likely to be scattered all throughout the country as well.  For example, IGS has been made aware that a patent assigned to Motorola is claimed to be potentially invalidating prior art-United States Patent No. 4,804,937 ("the Motorola Patent").[15]  Motorola is located in Illinois with listed inventors in Illinois and Texas.  These, therefore, are examples of witnesses which will come from Illinois and Texas, both in Central United States.  Not only is the convenience to these prior art witnesses a

---

[13] NetworkFleet's motion states, "When the distance between an existing venue for trial of a matter and a proposed venue under 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." Docket No. 31, page 9, quoting *In re TS Tech Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).  So travelling from South Carolina to California is roughly twice as inconvenient for IGS than travelling to the Eastern District of Texas.  Presently, the inconvenience for both parties is roughly equal. It is hardly fair to ask this Court to "double" IGS's inconvenience by shifting NetworkFleet's travel burden to IGS. "[T]o the extent transfer would only serve to shift the burden of location … transfer is not appropriate." *AdvanceMe, Inc. v. Rapidpay LLC*, 450 F. Supp. 2d 669, 675 (E.D. Tex. 2006).  NetworkFleet is talking out of both sides of its mouth by arguing that the travel from Tyler to San Diego is not inconvenient to IGS but that same travel is highly inconvenient to NetworkFleet.

[14] See Exhibit A, Lesesky Decl., ¶ 7.

[15] The first page of the Motorola Patent is attached as Exhibit F.

necessary consideration; it is given greater weight than the convenience of the parties. *See Shoemaker v. Union Pacific Railroad Co.*, 233 F. Supp. 2d 828, 832 (E.D. Tex. 2002). The witnesses identified in NetworkFleet's motion are mostly NetworkFleet employees so NetworkFleet can have these witnesses appear where needed. But the Southern District of California is not more convenient than the Eastern District of Texas for non-party witnesses located in Illinois and Texas, for example, who do not travel at the behest of NetworkFleet.

Likewise, expert testimony related to infringement of any patent in suit or damages is likely to come from witnesses who could reside anywhere in the United States. Witnesses related to the sale and distribution of the accused products and prior art witnesses, regardless of the amount of defendants in the suit, are also likely to come from dispersed locations. *Network-1*, 433 F. Supp 2d at 802-03.

Even if all of NetworkFleet's documents are located in California, they can be transported to Tyler with relative ease the same as to San Diego. Again, because moving to San Diego would more than double the distance to transport IGS' documents, there would be no overall savings in document travel distance. While courts have said the location of documents is still part of the transfer inquiry, it is undeniable that electronic discovery lessens the inconvenience of document location. *Motiva, LLC v. Nintendo Co.*, No. 6:08-cv-429, 2009 U.S. Dist. LEXIS 55406, *7 (E.D. Tex. June 30, 2009) (Davis, J.) At this early stage of the litigation it is unclear which issues will move to the forefront and be most relevant or what evidence will be requested or produced as the litigation progresses. It is equally unclear if California is home to an overwhelming amount of witnesses and documents as NetworkFleet would have this Court believe. Accordingly, transfer from a centrally located venue to a west coast one is at the very least premature at this stage. Party witnesses as well as likely experts on infringement, sales and

distribution, prior art witnesses, relevant documents, and other evidence are still likely located in numerous states throughout the United States, at least to the extent of rendering this factor neutral, if not in favor of denial of transfer of venue.

All of these considerations clearly favor denying NetworkFleet's motion to transfer whether or not their motion to sever is denied.

### ii.  *Availability of compulsory process to secure attendance of witnesses*

**If Severance is Denied.**  There are six parties spread throughout the United States, so there is no single Federal District Court that will have ultimate subpoena power over all parties. Neither the Eastern District of Texas nor the Southern District of California has subpoena power over unwilling witnesses located outside of their respective areas.

**If Severance is Granted.**  If severance is granted there will still be a substantial number of witnesses outside of Texas and California, so again there is no court with absolute subpoena power.  Even NetworkFleet is likely to have witnesses outside of California[16] who are out of reach of the Southern District of California's subpoena power.  There are also likely third party and prior art witnesses who will be out of reach of either court's subpoena power.  Whether severance is granted or not, this factor is neutral.

### iii.  *Cost of attendance of willing witnesses*

The cost of attendance of willing witnesses favors non-transfer, and at the very least is neutral.  When weighing this factor all the possible willing witnesses, including third parties, need be taken into account. *Id*.  At a minimum willing witnesses include each party's witnesses.

**If Severance is Denied.**  With these witnesses and other willing third party witnesses, such as infringement or damage experts, likely located all over the country, the cost of travel to a highly-accessible central location like the Eastern District will result in substantially reduced

---

[16]  Most likely from Georgia.

overall costs. While it is early in the litigation and experts have not been designated for any purpose, it is likely that willing witnesses will come from at least nine states.[17] Because of this geographic spread transfer to California would simply "reallocate inconvenience, rather than lessen it." *Novartis*, 597 F. Supp. 2d at 713. NetworkFleet's increased convenience from a transfer to the west coast is more than offset by the additional burdens placed on other party and non-party witnesses.

**If Severance is Granted.** Even if severance is granted this factor is neutral at best. While NetworkFleet stresses its likely California witnesses in its motion, it ignores the fact that some of its willing witnesses are likely to reside in Georgia and face increased cost and burden from a transfer. IGS' witnesses will likewise be much more inconvenienced by traveling across the country, a distance of nearly 2500 miles, as opposed to only 1000 miles to Tyler.

> *iv.   All other practical matters that make a trial easy, expeditious, and inexpensive*

Whether severance is granted or not, this factor is neutral, as no matters which make trial easy, expeditious, and inexpensive are in favor of transfer or non-transfer.

### d.   The Public Interest Factors Favor Denial of Transfer Motion

The public interest factors do not favor transfer from the Eastern District to the Southern District, and at worst are neutral.

> *i.   Administrative difficulties flowing from court congestion*

NetworkFleet claims that the time to disposition of cases in the two districts favors transfer because cases in the Southern District of California reach disposition more quickly. NetworkFleet cites no statistics in support of this proposition. Current statistics for the two venues show the average time to trial in the Eastern District is 18.5 months while in the Southern

---

[17] Again, these states include: South Carolina, North Carolina, Texas, Georgia, California, New York, New Hampshire, Connecticut, and Minnesota.

District is 25.5 months.[18] Even in light of the Fifth Circuit's observation that this factor is the "most speculative" and "case disposition statistics may not always tell the whole story" (*In re Genetech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009)), this factor is neutral at worst, and more likely favors denial of transfer.

### ii. *Local interest in having localized interests decided at home*

This factor is neutral. NetworkFleet's motion focuses on Texas, claming that the Eastern District has little interest in determining the outcome of this case solely because infringing products are sold here. NetworkFleet's motion fails however to state any interest the Southern District of California may have in determining the outcome of this dispute. As no single venue possesses a uniquely meaningful connection to any patent dispute where products are made, used, or sold all over the country, this factor is neutral. *TS Tech*, 551 F.3d at 1321.

### iii. *Familiarity of the forum with the law that will govern the case*

Patent infringement disputes are governed by federal law. This factor is neutral because both courts are familiar with the applicable law. However it is undeniable that the Eastern District has significant familiarity and experience with patent related disputes.

### iv. *Avoidance of unnecessary problems of conflicts of laws or in the application of foreign law*

This factor is also neutral, as there are no apparent conflicts of laws problems that will need to be avoided and no foreign law that will need to be applied.

### 2. **Conclusion**

The totality of the private and public interest factors reveal that NetworkFleet has failed to "***clearly*** demonstrate that a transfer is for the convenience of parties and witnesses, in the interest of justice. Thus, when the transferee venue is not clearly more convenient the venue

---

[18] See Federal Court Management Statistics, http://www.uscourts.gov/cgi-bin/cinsd2008.pl (last visited July 13, 2009) attached Exhibits H and I.

chosen by the plaintiff, the plaintiff's choice should be respected." *In re Volkswagen,* 545 F.3d at 315. (internal citations omitted). A transfer from the Eastern District to the Southern District would accomplish neither convenience nor would be in the interest of justice. NetworkFleet's Motion focuses solely on its location in California, but "in light of the evidence that the relevant witnesses and documents are spread across the country, the simple fact that one of the defendants operates primarily in the transferee venue cannot, standing alone, show clear convenience. If that were so, most cases could only be tried where the parties had their principal places of business. That result is clearly in conflict with a plaintiff's right to file a case in a district where jurisdiction and venue are proper." *Motiva, LLC,* 2009 U.S. Dist. LEXIS 55406 at *11.

### III.  CONCLUSION AND PRAYER

For the reasons stated above, IGS respectfully asks the court to deny in full NetworkFleet's motion to sever and transfer venue.

**Dated:   July 17, 2009**                                  Respectfully submitted,

/s/  Michael T. Cooke
State Bar No. 04759650
Jonathan T. Suder
State Bar No. 19463350
Todd I. Blumenfeld
State Bar No. 24067518
FRIEDMAN, SUDER & COOKE
Tindall Square Warehouse No. 1
604 East 4th Street, Suite 200
Fort Worth, Texas 76102
(817) 334-0400
Fax (817) 334-0401
jts@fsclaw.com
mtc@fsclaw.com
blumenfeld@fsclaw.com

        Keith A. Rutherford
        R. Scott Reese
        Sarah R. Cabello
        WONG, CABELLO, LUTSCH,
         RUTHERFORD & BRUCCULERI, LLP
        20333 SH 249, Suite 600
        Houston, TX 77070
        (832) 446-2400
        Fax (832) 446-2424
        krutherford@counselip.com
        sreese@counselip.com
        scabello@counselip.com

        Eric M. Albritton
        ERIC M. ALBRITTON, P.C.
        P.O. Box 2649
        111 West Tyler Street
        Longview, TX 75601
        (903) 757-8449 x204
        Fax (903) 758-7397
        ema@emafirm.com

        ATTORNEYS FOR PLAINTIFF
        INNOVATIVE GLOBAL SYSTEMS, LLC

## **CERTIFICATE OF SERVICE**

    I hereby certify that on the 17th day of July, 2009, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, Tyler Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

        /s/ Michael T. Cooke

M:\VES\-02\Pleadings\Response to NetworkFleet's Motion to Sever and Transfer Venue.FINAL.doc