UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| INNOVATIVE GLOBAL SYSTEMS LLC,<br><br>　Plaintiff,<br><br>v.<br><br>TURNPIKE GLOBAL TECHOLOGIES L.L.C., GADEC GLOBAL, INC., XATA CORPORATION, GENERAL ELECTRIC COMPANY, TRIMBLE NAVIGATION, Ltd. and NETWORKFLEET, Inc.,<br><br>　Defendants. | Civil Action File No. 6:09cv157<br>JURY TRIAL REQUESTED<br><br>JUDGE DAVIS |

### DEFENDANT NETWORKFLEET INC.'S REPLY IN SUPPORT OF ITS MOTION TO SEVER AND TRANSFER VENUE

The Court should grant NetworkFleet's Motion to Sever and Transfer Venue. In its opposition brief, Innovative Global failed to show that its claims against the unrelated defendants arise from the "same transaction" for purposes of Federal Rule of Civil Procedure 20. Innovative Global attempts to create a new joinder standard that would eviscerate Rule 20. Innovative Global also disregards recent Federal Circuit precedent to argue that the public and private interest factors weigh in favor of denying transfer.

**I.   The Court should sever because the accused devices are not substantially similar.**

A plaintiff must meet two separate requirements to join multiple defendants in a single action: (1) the plaintiff must assert that the defendants are jointly and severally liable or that the claims arise out of the same transaction or occurrence *and* (2) there must be a common question of fact or law as to all defendants. Fed. R. Civ. P. 20(a)(2). Innovative Global conflates the two requirements and asserts that if all defendants are accused of infringing the same patent, then

957089

joinder is appropriate.

Innovative Global's reliance on *MyMail* for this rule is misplaced. *MyMail* does not stand for the proposition that a patent suit against multiple defendants can never be severed. *See MyMail, Ltd v. Am. Online, Inc.*, 223 F.R.D. 455, 457 (E.D. Tex 2004). *MyMail* denied severance as the plaintiff was able to show that the accused devices were not separate and distinct, leading to the conclusion that the infringement arose from the same transaction or occurrence. *Id.* at 457-58. In fact, *MyMail* favorably cited a decision that found that acts of infringement did not arise from the same transaction because "the plaintiffs [did] not show[] that the second defendant's infringement acts are connected to the first defendant's nor that the machines at issue are similar." *Id.* at 457 (citing *New Jersey Machine, Inc. v. Alford Industries, Inc.*, 1991 U.S. Dist. LEXIS 20376, at *2 (D.N.J. Oct. 7, 1991)).

In contrast to *MyMail*, but like *New Jersey Machinery*, Innovative Global failed to show a connection between the defendants' accused infringement or a material similarity between accused devices. Innovative Global relies on trivial, non-material features of the defendants' different accused devices to attempt to show that the defendants "utilize shared resources."

Innovative Global points to two alleged similarities: the use of AT&T as a wireless provider and the existence of a J1708 connector on some of the defendants' devices to support its "shared resources" argument. These alleged "similarities" are tangential. Use of the same wireless provider and a J1708 connector is far different from sharing the same "dial-up Internet access numbers." Many devices exist today that rely on AT&T for wireless access. A cellular phone and a laptop are not substantially similar just because they both connect to the Internet via AT&T (even though both can be generically called "devices for receiving a wireless signal").

It is similarly immaterial that some of the accused devices use a J1708 connector. Many

devices exist with a J1708 connector to connect to a vehicle and are not substantially similar. A similar stretch would be to argue that a computer keyboard and mouse that both utilize a USB connector to plug into a computer are substantially similar. Thus, Innovative Global has failed to establish that all the defendants' products are substantially similar.

Innovative Global's argument that this Motion is premature fails as discovery is unlikely to lead to facts showing a substantial similarity among the accused devices. Innovative Global was required to conduct a pre-filing investigation of the accused devices (including an inspection of those devices) before filing this suit. *See e.g., View Eng'g, Inc. v. Robotic Vision Sys.*, 208 F.3d 981 (Fed. Cir. 2000). A proper pre-filing investigation would provide Innovative Global with enough information to articulate non-trivial components of the accused devices that contribute to substantial similarity. If there were material similarities between the accused devices, Innovative Global would have relied on those similarities. Additional discovery will not change the fact that the accused devices are separate and independent.

Therefore, the Court should grant NetworkFleet's Motion to sever because the claims against each defendant arise out of a separate transaction or occurrence. Even though common questions of law and fact may be present in this case, this factor alone does not meet the Rule 20 requirements.[1] Therefore, the parties are mis-joined under Rule 20.

Because the parties are mis-joined, the Court should sever the claims against NetworkFleet under Rule 21. Innovative Global argues that the Court should not exercise its discretion to sever because the risk of inconsistent claim construction and judicial economies favor joinder. This argument fails for at least four reasons.

First, the risk of inconsistent claim constructions is speculative. Even if every defendant

---

[1] This is somewhat speculative because Innovative Global has not alleged what claims each defendant is allegedly infringing and the defendants may choose to rely on different prior art.

is transferred to a different district, the federal courts are well equipped to handle such situations. Patentees regularly litigate cases and bring infringement claims regarding the same patents in multiple federal courts. Scheduling mechanisms can also help avoid inconsistent claim constructions. For example, once a court has issued a claim construction order, other courts can use that order to help resolve issues in their cases. Moreover, because the accused devices are different, the parties may choose to focus on different terms for construction, leading to little if any, overlap in claim construction.

Second, the need for uniformity and finality in the determination of claim scope is not furthered by consolidating mis-joined defendants for at least two reasons. First, unless this case goes to the Federal Circuit, any new defendant can re-litigate the claim construction determination by the Court. *See e.g., Texas Instruments, Inc. v. Linear Techs. Corp.*, 182 F. Supp. 2d 580, 585 (E.D. Tex. 2002). Second, over 29% percent of claim construction decisions are overturned by the Federal Circuit. *See, Practice Makes Perfect? An Empirical Study of Claim Construction Reversal Rates in Patent Cases*, 107 MICH. L. REV. 223, 249 (2008). The rate of claim construction reversals contributes to ***uncertainty*** regarding claim scope, even after a district court issues a claim construction order.

Third, Innovative Global's argument that joinder automatically confers judicial economies is misplaced. Innovative Global will have to take discovery from each defendant regardless of where this case is located. Innovative Global's argument also assumes that the defendants will be required to conduct joint discovery, which deprives each defendant of its right to defend the accusations of infringement as to ***its*** accused device. Moreover, if joined, each defendant will have to expend additional resources, such as the cost of attending depositions of unrelated defendants, which not only wastes resources but also increases the risk of inadvertent

disclosure of important, confidential business information.

Fourth, the courts have a mechanism in place to serve judicial economy in cases involving only common questions of law and fact pending in multiple districts: multidistrict litigation. *See e.g.,* 17-112 Moore's Federal Practice - Civil § 112.02. Allowing unrelated defendants with no connection other than accusation by a plaintiff that they infringe the same patent to be mis-joined is not the solution to plaintiff's complaints.

## II. NetworkFleet should be transferred to the Southern District of California.

This Court should transfer the properly severed action against NetworkFleet to the Southern District of California.[2] Innovative Global relies on the central location rationale, rejected by the Federal Circuit, to support the Eastern District of Texas ("EDTX") as a proper venue. Innovative Global asserts that because the EDTX is equally inconvenient for all parties, it is the most convenient forum. This theory is not only illogical, it was specifically rejected by the Federal Circuit. *See In re Genentech, Inc.,* --- F.3d ---, 2009 U.S. App. LEXIS 10882 (Fed. Cir. May. 22, 2009).

Neither Innovative Global nor NetworkFleet have a presence in the EDTX. Innovative Global points to one potential witness in the Southern District of Texas (outside of this court's subpoena power) as a reason for preventing transfer. Innovative Global also argues that two inventors of a potential prior art reference "will come from ... Texas." But Innovative Global failed to establish that these possible witnesses are within the subpoena power of this court (and failed to mention that the addresses for these witnesses are from 1987).

---

[2] NetworkFleet does not argue at this time that this case should be transferred absent severance. However, if this Motion is denied, NetworkFleet reserves its rights to confer with all defendants, collect facts, and move to transfer all defendants to one forum more convenient than the EDTX.

-4-

In contrast, NetworkFleet has identified at least nine witnesses that reside in California and none in Texas. Any concerns regarding judicial economy fail for the reasons discussed above. The substantial weight of evidence and witnesses are in the Southern District of California, the proper venue for this action.

Accordingly, NetworkFleet respectfully requests that the Court grant its Motion to Sever and Transfer.

Dated this 27th day of July, 2009.

Respectfully submitted,

/s/ Ophelia F. Camiña
Ophelia F. Camiña
Texas Bar No. 03681500
Susman Godfrey
901 Main Street
Suite 5100
Dallas, Texas 75202-3775
Telephone: (214) 754-1900
Facsimile: (214) 754-1933
E-Mail: ocamina@susmangodfrey.com

OF COUNSEL:
(*Applications for Special Admission pending*)
Lawrence K. Nodine (Trial Counsel)
Georgia Bar No. 545250
nodinel@ballardspahr.com
Robin L. Gentry
Georgia Bar No. 289889
gentryr@ballardspahr.com
Charley F. Brown
Georgia Bar No. 086754
browncf@ballardspahr.com
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
999 Peachtree Street, Suite 1000
Atlanta, Georgia 30309
Telephone 678-420-9300
Fax 678-420-9301

ATTORNEYS FOR DEFENDANT,
NETWORKFLEET, INC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this, the 27th day of July, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to counsel for the Plaintiff:

| | |
|---|---|
| Michael T. Cooke<br>State Bar No. 04759650<br>Jonathan T. Suder<br>State Bar No. 19463350<br>FRIEDMAN, SUDER & COOKE<br>Tindall Square Warehouse No. 1<br>604 East 4th Street, Suite 200<br>Fort Worth, Texas 76102<br>(817) 334-0400<br>Fax (817) 334-0401<br>jts@fsclaw.com<br>mtc@fsclaw.com | Keith A. Rutherford<br>R. Scott Reese<br>Sarah R. Cabello<br>WONG, CABELLO, LUTSCH, RUTHERFORD & BRUCCULERI, LLP<br>20333 SH 249, Suite 600<br>Houston, TX 77070<br>(832) 446-2400<br>Fax (832) 446-2424<br>krutherford@counselip.com<br>sreese@counselip.com<br>scabello@counselip.com |
| Eric M. Albritton<br>ERIC M. ALBRITTON, P.C.<br>P.O. Box 2649<br>111 West Tyler Street<br>Longview, TX 75601<br>(903) 757-8449 x204<br>Fax (903) 758-7397<br>ema@emafirm.com | |

/s/ Ophelia F. Camiña
Ophelia F. Camiña