IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| INNOVATIVE GLOBAL SYSTEMS LLC, | ' | |
| | ' | |
| Plaintiff, | ' | |
| | ' | |
| v. | ' | CIVIL ACTION NO. 6:09-cv-00157 |
| | ' | |
| TURNPIKE GLOBAL TECHNOLOGIES | ' | **JURY TRIAL DEMANDED** |
| L.L.C.,  CADEC GLOBAL, INC., XATA | ' | |
| CORPORATION, GE ASSET | ' | |
| INTELLIGENCE, LLC and | ' | |
| NETWORKFLEET, INC. | ' | |
| | ' | |
| Defendants. | ' | |
| | ' | |

**PLAINTIFF IGS' REPLY BRIEF REGARDING
CLAIM CONSTRUCTION ISSUES PURSUANT TO PATENT RULE 4-5(c)**

Keith A. Rutherford
State Bar No. 17452000
R. Scott Reese
Texas State Bar No. 24046696
**WONG, CABELLO, LUTSCH,
RUTHERFORD & BRUCCULERI L.L.P.**
20333 S.H. 249, Suite 600
Houston, Texas 77070
Telephone: (832) 446-2425
Facsimile: (832) 446-2424
E-Mail: krutherford@counselip.com
E-Mail: sreese@counselip.com

Michael T. Cooke
State Bar No. 04759650
Jonathan T. Suder
State Bar No. 19463350
FRIEDMAN, SUDER & COOKE
Tindall Square Warehouse No. 1
604 East 4th Street, Suite 200
Fort Worth, Texas 76102
(817) 334-0400
Fax (817) 334-0401
jts@fsclaw.com
mtc@fsclaw.com

Eric M. Albritton
Eric M. Albritton, P.C.
P.O. Box 2649
111 West Tyler Street
Longview, TX  75601
(903) 757-8449 x204
Fax (903) 758-7397
ema@emafirm.com

ATTORNEYS FOR PLAINTIFF

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... i

I.  INTRODUCTION ..................................................................................................... 1

II. DATA COMMUNICATIONS IN THE ASSERTED CLAIMS ARE NOT
    LIMITED TO CLOSE PROXIMITY TO THE VEHICLE ............................... 1

   A.  Applicant did not Surrender Claim Scope to Long Distance Communication
       During the Prosecution of the '299 Patent. ...................................................... 1
   B.  Contrary to Cadec's Assertions, the Terminal Disclaimers During the
       Prosecution of the Asserted Patents Indicate that the Claim Scope of the
       Asserted Patents is Different than that of the '299 Patent. .............................. 4

III. ONE OF ORDINARY SKILL IN THE ART WOULD UNDERSTAND FROM
     THE CLAIMS AND FROM THE CLAIMS IN LIGHT OF THE
     SPECIFICATION THAT DATA, NOT RULES, IS TRANSMITTED ALONG
     THE PLURALITY OF CONDUCTORS, CONVERTED, AND
     TRANSMITTED BETWEEN THE VEHICLE AND A REMOTE LOCATION. .......... 4

   A.  Cadec's Proposed Claim Construction Disregards How One of Skill in the Art
       Would Understand the Disputed Terms. ............................................................ 5
   B.  One of Skill in the Art Would Understand the Converting and Transmitting of
       Data Communications Protocol Limitations in Accordance with IGS' Proposed
       Constructions. .................................................................................................... 6
       1.  Those of Skill in the Art Speak of Converting and Transmitting Protocols
           as Shorthand for Converting and Transmitting Data. .............................. 6
       2.  The Patent Specification Provides Clear Guidance that Data, not Rules, is
           Converted and Transmitted. ..................................................................... 7

IV. THE COURT SHOULD ADOPT IGS' PROPOSED CONSTRUCTIONS OF
    THE REMAINING CLAIM TERMS ...................................................................... 8

   A.  Data Includes Both Information Both Originating From and Directed to the
       Vehicle. .............................................................................................................. 8
   B.  Connected and Operatively Connected. ............................................................. 8
   C.  The Term "heavy duty vehicle" Needs no Construction. ................................... 9
   D.  The Term "connector" Covers More Than Electronically Connecting ............. 9
   E.  "convert" and "converting" is Still Disputed .................................................. 10
   F.  The Structure Corresponding to "vehicle data communications protocol
       converting means" is a Circuit or Microprocessor. ........................................ 10

## TABLE OF AUTHORITIES

**Cases**

*Chef America, Inc. v. Lamb-Weston, Inc*. 358 F.3d 1371, 1374 (Fed. Cir. 2004) .......................... 5

*Elkay Mfg. Co. v. EBCO Mfg*. Co., 192 F.3d 973, 980 (Fed. Cir. 1999) ....................................... 3

*Hakim v. Cannon Avent Group, PLC* 479 F.3d 1313 (Fed. Cir. 2007).......................................... 3

*Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.,* 222 F.3d 951 (Fed. Cir. 2000) ................ 5

*In re Clement*, 131 F.3d 1464, 1469 (Fed. Cir. 1997) ................... 3

*In re Goodman*, 11 F.3d 1046, 1052 (Fed. Cir. 1993) ................... 4

*Lonestar Inventions LP v. Nintendo of Am., Inc.,* 6:07CV261, 2009 U.S. Dist. LEXIS 31753, at
    *40-41, (E.D. Tex. April 14, 2009).......................................................................................... 5

*Ortho-McNeil Pharmaceutical, Inc. v. Mylan Laboratories, Inc.,* 520 F.3d 1358 (Fed. Cir. 2008)
    ................................................................................................................................................ 5

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ................................................ 5, 6

*Seachange Int'l, Inc. v. C-COR Inc*., 413 F.3d 1361, 1373 (Fed. Cir. 2005) ................................ 2

*Ultimate Cement Mftg. Corp. v. CTS Mftg. Corp.*, 587 F.3d 1339 (Fed. Cir. 2009) ..................... 6

*Vulcan Eng'g Co. v. FATA Aluminium, Inc*., 278 F.3d 1366, 1376 (Fed. Cir. 2002).................. 10

**Statutes**

35 U.S.C. § 101................................................................................................................................4

**<u>EXHIBITS</u>**

**Exhibit A .......**Updated Joint Claim Construction Chart

**Exhibit B .......**Fuchs Declaration

## I.  INTRODUCTION[1]

Two claim construction issues dominate Cadec's claim construction brief.  The first issue is whether data communication between the vehicle and the remote location is limited to close proximity of a vehicle.  IGS believes it is not.  Cadec asks this Court to apply a rule of claim construction whereby a specific limitation added to some of the claims in a parent patent application is imputed to all claims in all later patent applications, even when that limitation is not included in the later claims.  Cadec's proposed claim construction rule is contrary to both Federal Circuit case law and common claim drafting and patent prosecution practice.

The second issue is whether the claims require that data in one protocol is converted to data in another protocol before transmission, or as Cadec argues, would a person of ordinary skill in the art truly understand the claims to mean that only protocols (i.e. sets of rules) are converted and transmitted.  Cadec asks the Court to deconstruct claim limitations into their component words, apply extrinsic dictionary definitions to those words in a vacuum, and then string together those dictionary definitions to yield a construction without any regard to how one of ordinary skill in the art would interpret the limitation or how the limitation is defined in the specification.  The Court of Appeals for the Federal Circuit has unambiguously stated that such claim constructions are erroneous; claims are given the meaning as understood by one of ordinary skill in the art in light of the intrinsic evidence.

## II.  DATA COMMUNICATIONS IN THE ASSERTED CLAIMS ARE NOT LIMITED TO CLOSE PROXIMITY TO THE VEHICLE[2]

### A.  Applicant did not Surrender Claim Scope to Long Distance Communication During the Prosecution of the '299 Patent.

---

[1]  An updated Joint Claim Construction Chart is attached as Exhibit A.

[2]  The disputed claim terms relevant to this Section are "*second data communications protocol*," "*second RF communication protocol*," "*wireless data communications protocol*," "*transceiver,*" and "*remote data communications terminal.*"

Cadec does not dispute that the specification of the '299 Patent, which is the parent of the Asserted Patents, as well as the specifications of the Asserted Patents themselves, supports *both* long distance communication and communication within to a close proximity to the vehicle.  RF communication is particularly well suited for both long distance (cellular or satellite) or short distance communication.  In other words, the specifications disclose two species (local area and long distance) of the genus (data communications).  Some of the claims of the '299 Patent were amended by adding the limitation "local area" into the phrase "second data communications protocol" to yield "second <u>local area</u> data communications protocol."  Thus, Applicant chose to limit these specific amended claims of the '299 Patent to the local area species.  Cadec's is now arguing that IGS surrendered the ground of any communication beyond close proximity in the earlier prosecution of the '299 Patent.

Surrender of claim scope must be clear and unambiguous.[3]  Here, the applicant did not clearly and unambiguously surrender all claim scope beyond close proximity.  Applicant never amended claims 1-10 of the '299 Application to include the "local-area" limitations and importantly never argued that these claims were limited to close proximity.[4]  Instead, Applicant distinguished claims 1-10 based on the fact that the cited art (the DiLullo, Jenquin, and Jasper references) did not teach two-way communication (i.e., sending and receiving).[5]  Applicant only amended claims 11, 27, 47, and 55 (and their respective dependent claims) to include the "local-

---

[3]  *See, e.g., Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1373 (Fed. Cir. 2005) ("A disclaimer must be clear and unambiguous.").

[4]  If Applicant had argued during the prosecution of the '299 Patent that the second data communications protocol terms themselves (without being modified by the words "local area") were limited to close proximity, then Cadec would be correct that IGS should not be allowed to now argue that these limitations read on long distance communications.  But Applicant never made such an argument.

[5]  *See* Dkt. No. 114, Exhibit J, Response to Office Action Dated November 12, 199, pages 12-13 ("Because none of the cited patents, alone or in combination, teach or suggest a plurality of conductors and a connector positioned in the cab of the tractor for two-way communications, Applicants respectfully submit that the Examiner has failed to set forth a prima facie showing of unpatentability with respect to Claims 1-10.").  It is noted that the Asserted Claims include sending and receiving.

area" limitation and <u>under a separate heading from claims 1-10</u> argued that those claims were distinguishable over the prior art because of the local area limitation, as well as for the reasons pointed out for claims 1-10. Applicant did not disavow or surrender claim scope of the broader genus claims to both long distance and local-area communications even for all of the claims in the '299 Patent, much less for the follow-on patents.[6] Applicant then followed up with continuation applications directed to additional claims that do not include the "local-area" limitation.[7]

It is common for different claims in a patent and different patents in a family of patents to have varying claim scopes. For example, frequently an applicant facing rejections in an early patent application will amend the claims to claim a narrow embodiment (*i.e.*, a particular species)[8] in order to expedite allowance of one set of claims and will then file a continuation to persist in trying to obtain allowance of broader claims (for example, claims to the broader genus).[9] Cadec's proposed claim construction rule contravenes this clear Federal Circuit precedent and presupposes that once an applicant amends claims in one patent application, the

---

[6]   Cadec cites to *Hakim v. Cannon Avent Group, PLC* 479 F.3d 1313 (Fed. Cir. 2007) to support their position that an Applicant cannot reclaim scope that Applicant has surrendered without clearly informing the examiner that Applicant is rescinding his earlier surrender. The facts in *Hakim* are distinguishable from the instant facts. In *Hakim*, Applicant argued in an earlier patent application that a "slit" was the feature that distinguished his claims from the prior art. *Id*. at 1316. In a later patent Applicant substituted the word "opening" for "slit." In the instant case, Applicant only argued the close proximity distinction with regard to claims that specifically included the "local-area" limitation and ***not*** in regard to claims that did not. It is clear that Applicant only intended the local-area arguments to apply to claims that specifically included that limitation.

[7]   The case law Cadec cited in their brief actually supports IGS's proposed construction. For example, Cadec's brief states, "This limitation in the parent application should apply to the Patents-in-Suit. *See, e.g., Elkay Mfg. Co. v. EBCO Mfg*. Co., 192 F.3d 973, 980 (Fed. Cir. 1999) ("When multiple patents derive from the same initial application, the prosecution history ***regarding a claim limitation*** in any patent that has issued applies with equal force to subsequently issued patents ***that contain the same claim limitation***.")," (emphasis added by IGS). As IGS has pointed out, the asserted claims ***do not contain the same claim limitation***, *i.e.*, "second <u>local-area</u> data communications protocol." Cadec is attempting to use the prosecution history of the '299 Patent to interpret claim limitations that are ***different*** than the term discussed in the prosecution history.

[8]   Species are always a subset of a genus. For instance, a zebra is a particular species of the genus mammals.

[9]   *See, e.g., In re Clement*, 131 F.3d 1464, 1469 (Fed. Cir. 1997) ("if an applicant amends a broad claim in an effort to distinguish a reference and obtain allowance, but promptly files a continuation application to continue to traverse the prior art rejections, circumstances would suggest that the applicant did not admit that broader claims were not patentable").

applicant can never seek claim scope that is different than the amended claim in subsequent

patent applications.  Cadec's claim construction rule should be rejected because it contradicts

both established patent prosecution practice and Federal Circuit precedent.

**B. Contrary to Cadec's Assertions, the Terminal Disclaimers During the Prosecution of the Asserted Patents Indicate that the Claim Scope of the Asserted Patents is Different than that of the '299 Patent.**

Cadec argues that because the Examiner issued Obviousness-type Double Patenting

Rejections during the prosecution of the Asserted Patents with regard to the '299 Patent, this

indicates that the "second data communication protocol" limitations must include the local-area

requirement.  To the contrary, the fact that Applicant was able to overcome the Double Patenting

Rejection by filing a Terminal Disclaimer is evidence that the scope of the Asserted Patents is

<u>broader</u> than the scope of the '299 Patent.  If the Examiner had believed the scope of the claims

were the same, then the Examiner would have issued a Statutory Double Patenting Rejection

under 35 U.S.C. § 101.[10]  A Statutory Double Patenting Rejection <u>cannot</u> be overcome by filing a

Terminal Disclaimer.  However, since the Examiner believed that the scope of the claims was

different, the Examiner issued an "Obviousness-Type" Double Patenting Rejection, which can be

overcome by filing a Terminal Disclaimer.[11]

**III. ONE OF ORDINARY SKILL IN THE ART WOULD UNDERSTAND FROM THE CLAIMS AND FROM THE CLAIMS IN LIGHT OF THE SPECIFICATION THAT DATA, NOT RULES, IS TRANSMITTED ALONG THE PLURALITY OF CONDUCTORS, CONVERTED, AND TRANSMITTED BETWEEN THE VEHICLE**

---

[10] *See, e.g., In re Goodman*, 11 F.3d 1046, 1052 (Fed. Cir. 1993) ("The double patenting determination involves two inquiries.  First, is the same invention claimed twice?  This inquiry hinges upon the scope of the claims in question.  If the claimed inventions are identical in scope, the proper rejection is under *35 U.S.C. § 101* because an inventor is entitled to a single patent for an invention.") (citations omitted).

[11] *Id.*  ("If one claimed invention ***has a broader scope than the other***, the court must proceed to a second inquiry: whether one claim defines merely an obvious variation of the other patent claim.  Without a patentable distinction -- because the pending claim defines merely an obvious variation of the patented claim -- ***the patentee may overcome the double patenting rejection by filing a terminal disclaimer***.") (citations omitted, emphasis added).

**AND A REMOTE LOCATION.**[12]

### A. Cadec's Proposed Claim Construction Disregards How One of Skill in the Art Would Understand the Disputed Terms.

Cadec alleges that IGS is asking the Court to "redraft" the claims to cure a claim drafting error to allow IGS to claim the conversion and transmission of data rather than the conversion and transmission of protocols.  Cadec then proceeds to argue that it is improper for the Court to "redraft" the claims to avoid a nonsensical result.[13]  But IGS is not asking the Court to "redraft" claims.  Instead, IGS's proposed claim constructions reflect are how a person of ordinary skill in the art would interpret the claims as they are presently drafted.  To be clear, adopting IGS's proposed constructions would serve to give the claims their proper meaning, not redraft them in any manner.  Claims should always be construed to give patent claim terms their meaning as understood by a person of ordinary skill in the art who has read the entire patent, including the specification.[14]  As explained in IGS' opening brief and further below, a person of skill in the art would understand the disputed terms in accordance with IGS' proposed constructions.

Cadec is urging incorrect claim construction principles by arguing that the disputed claim terms should be construed based on a dictionary definition of only one word in the disputed phrase, protocol, without regard to how one of ordinary skill in the art would understand the entire disputed terms based on the context of the claims, the patent specifications, and the prosecution history.  The Court of Appeals for the Federal Circuit has clearly rejected a method

---

[12]  The disputed claim terms relevant to this section are:  *"first data communications protocol," "first vehicle data communications protocol," "second data communications protocol," "second RF communication protocol,"* and *"wireless data communications protocol."*

[13]  Cadec bases their legal argument on *Chef America, Inc. v. Lamb-Weston, Inc.* 358 F.3d 1371, 1374 (Fed. Cir. 2004).  But this Court has recognized that the holding in *Chef America* is limited to the situation where the claim is susceptible to **only one reasonable construction**.  But when the claim, as drafted, is susceptible to more than one reasonable construction, as the claims at issue here are, the holding in *Chef America* does not apply.  *See Lonestar Inventions LP v. Nintendo of Am., Inc.,* 6:07CV261, 2009 U.S. Dist. LEXIS 31753, at *40-41, (E.D. Tex. April 14, 2009).  *See, also Ortho-McNeil Pharmaceutical, Inc. v. Mylan Laboratories, Inc.*, 520 F.3d 1358 (Fed. Cir. 2008).

[14]  *Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.,* 222 F.3d 951, 955 (Fed. Cir. 2000), *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc); *Markman,* 52 F.3d at 386.

of claim construction wherein claim terms are given their plain and ordinary meaning in vacuum and has rejected Cadec's proposed methodology of elevating extrinsic evidence, such as dictionary definitions, above the patent specification.[15]

**B. One of Skill in the Art Would Understand the Converting and Transmitting of Data Communications Protocol Limitations in Accordance with IGS' Proposed Constructions.**

**1. Those of Skill in the Art Speak of Converting and Transmitting Protocols as Shorthand for Re-encoding and Transmitting Data.**

The Court is not being asked to construe the term "protocol," but instead is being asked to construe terms such as "*first data communications protocol*," that include more than just the term protocol. Rather than focusing on the meaning of the phrases as a whole to a person of skill in the art, Cadec attempts to draw the Court's attention to only one word in the phrase, "protocol," and asks the Court to define that word in a vacuum and then insert that construed word into the claimed phrase.[16] Cadec's proposed hyper technical parsing of the claim language ignores the fact that it is common for those of skill in the art[17] to talk about converting one protocol to another or transmitting a protocol, when in fact, the person of skill in the art means that data is converted and/or transmitted. IGS showed in its opening brief that the Patent Examiner at the time of the prosecution clearly interpreted the whole phrase just as IGS asserts. In addition, the Declaration of Dr. Axel Fuchs ("the Fuchs Declaration," (Exhibit B), and the Exhibits attached thereto demonstrate that as of the priority date of the Asserted Patents, it was

---

[15] *Phillips,* 415 F.3d at 1313. *See also Id.* at 1318, ("We have viewed extrinsic evidence in general as less reliable than the patent and its prosecution history in determining how to read claim terms, for several reasons.").

[16] The Court of Appeals for the Federal Circuit has rejected this approach. *See, e.g.*, *Ultimax Cement Mtg. Corp. v. CTS Cement Mtg. Corp.*, 587 F.3d 1339 (Fed. Cir. 2009). In *Ultimax Cement*, the meaning of "Soluble CaSO[4] anhydride," which was used in all of the claims was disputed. The Federal Circuit rejected the "stand-alone definition of 'anhydride' taken from a technical dictionary without context." *Id.* at 1346. Instead of focusing on the dictionary definition, the Federal Circuit instead focused on "the context in which the term was used within the claim and the specification. " *Id.* at 1347.

[17] Cadec has opposed the appointment of a technical advisor in this case. IGS believes that a technical advisor would confirm IGS' statements and those of IGS's expert about how those of skill would interpret the claim language.

common for those of skill in the art to refer to converting and transmitting protocols, when technically what was meant was converting and transmitting data.  Moreover, as evidenced by the Fuchs Declaration, one of skill in the art would understand by simply reading the claims that phrases such as "transmitting and receiving the second RF data communications protocol" necessarily means transmitting and receiving data in the second RF data communications protocol.  So even if the phrase alone was read in a vacuum without the benefit of the intrinsic evidence (which is should not be), a person of skill in the art would still understand it to mean what IGS proposes it means.

**2. The Patent Specification Provides Clear Guidance that Data, not Rules, is Converted and Transmitted.**

Even if a person of ordinary skill in the art had any doubt as to the meaning of the disputed "protocol" limitations based solely on the claim language, he would readily understand from the specification that data is being converted and transmitted and would therefore understand that the recitations concerning the conversion and transmission of protocols in the claims means converting and transmitting data in those protocols.  IGS' Opening Brief explained that the specifications are unequivocal that data, not rules, is converted and transmitted between the vehicle and a remote data communications terminal and IGS' Opening Brief identified a multitude of specific sections from the patent specifications and prosecution histories supporting this conclusion.  Cadec has ignored these citations, stating that such language from the specification "appears nowhere in the claims."  But this is incorrect.   Among the citations pointed out in IGS' Opening Brief is a citation to the specification specifically defining the second communications protocol as an "…infrared or RF communications protocol which is used to transmit <u>data</u> through the air to a remote data communications terminal.  *See, e.g.*, '203 Patent, col. 6, lines 52-54.  Such a clear definition cannot be ignored.

Moreover, it is not required that the specification overtly "define" a disputed term. Rather, the relevant issue is how a person of skill in the art would understand the disputed term in light of the specification as a whole.  A person of skill in the art would understand, based on the specifications of the Asserted Patents not rules are not converted and transmitted, but instead, data is re-encoded and tranmsitted.  *See* Exh. B (Fuchs Declaration).  Thus, a person of skill in the art would have interpreted the disputed "protocol" terms in accordance with IGS' proposed constructions.

## IV. THE COURT SHOULD ADOPT IGS' PROPOSED CONSTRUCTIONS OF THE REMAINING CLAIM TERMS

### A. Data Includes Both Information Both Originating From and Directed to the Vehicle.

Cadec agrees that data is information and admits that the specification discusses data at the remote terminal.  In other words, Cadec admits that the specification discusses data that would not be covered by their proposed construction.  Thus, Cadec's proposed construction is too narrow.  The same word "data" is used to discuss data transmitted on the conductors of the vehicle, data transmitted from the vehicle to the remote location, and data transmitted from the remote location to the vehicle.  The proper construction should be broad enough to cover all uses of the word data within the specifications and claims.  IGS' proposed construction covers all instances of the use of "data" in the specifications; Cadec's does not.

### B. Connected and Operatively Connected.

It is apparent that both IGS and Cadec agree that "connected to" reads on an embodiment where two entities are connected by some undetermined length of intervening wiring.  Accepting that the construction should cover that agreed embodiment, Cadec's proposed construction, "directly, physically linked to," could easily be confused by the jury to require the two entities to be physically connected, directly, without <u>any</u> intervening wiring.  Thus, IGS' proposed

construction, "linked together physically, communicatively, electrically, or logically" would be more clearly understood by a jury to read on the exemplary embodiment from the specification that both IGS and Cadec agree should be covered by this claim term.

"Operatively connected" implies more than an electronic connection, as urged by Cadec. It implies a connection based on operability. IGS' proposed construction captures this.

**C. The Term "heavy duty vehicle" Needs no Construction.**

IGS believes that heavy duty vehicle does not need a construction. But if the term is to be construed, it should not be construed by limiting it to a preferred embodiment, which is what Cadec is proposing. Instead, the term should be construed as it would be understood by a person of ordinary skill in the art. The construction should not specifically exclude an example of heavy duty vehicle given in the specification, such as recreational vehicles and heavy duty equipment (i.e., bulldozers). A persons of ordinary skill could easily look to the statutes referenced in IGS' Opening Brief and determine how the U.S. government defines the term.

Cadec alleges that the citations to the specification contained in IGS' opening brief are misleading because the cited text was changed in later specifications. However, the supposedly later changed text quoted in Cadec's brief also supports IGS' construction because the cited text clearly defines recreational vehicles and agricultural tractors as heavy duty vehicles: "it will be understood by those skilled in the art that other types of vehicles, such as recreational vehicle, agricultural tractors, *or **other** heavy duty vehicles* used in association with agricultural uses…" *See* the '800 Patent at 8:4-12. "Other" clearly shows that agricultural tractors and recreational vehicles are themselves also heavy duty vehicles.

**D. The Term "connector" Covers More Than Electronically Connecting**

IGS and Cadec agree that a "connector" is a physical device. Moreover, Cadec states that this term may not require construction. But Cadec continues to assert in its brief that

"connector" be limited to "electronically linking two or more components."  IGS pointed out in its Opening Brief that the specifications do not limit "connector" as providing electrical connections, but also refer to frictional fits, and the like.  *See* '203 Patent, col. 8, lines 2-4.  Thus, if "connector" is to be construed, it need not be limited to "electronically linking."

### E.  "convert" and "converting" is Still Disputed

Cadec's brief states that the terms "convert" and "converting" do not need construction. However, Cadec disagrees with IGS' understanding of the plain and ordinary meaning of this term.  Thus, it appears that the meaning of this term is in fact still disputed.  For the reasons explained in its Opening Brief and above with regard to the protocol conversion limitations, IGS believes that "convert/converting" is properly construed to have its plain and ordinary meaning of "re-encoding data in one protocol to another protocol."

### F.  The Structure Corresponding to "vehicle data communications protocol converting means" is a Circuit or Microprocessor.

IGS' Opening Brief pointed out that the structure identified with the function of protocol conversion is a circuit or microprocessor.  *See, e.g.*, '203 Patent, Col. 7, lines 20-30 (stating that the protocol converter 39' is "an RF data communications integrated circuit or analog circuit as understood by those skilled in the art which receives and transmits logic levels to a microprocessor or microcontroller and transmits and receives RF data communications according to predetermined RF data communications protocol.").  The additional specific structures listed by Cadec are also specific embodiments of structure relating to the function of protocol conversion.  But the claim element is not limited to these specific embodiments.  *See, e.g., Vulcan Eng'g Co. v. FATA Aluminium, Inc.*, 278 F.3d 1366, 1376 (Fed. Cir. 2002).  Moreover, as explained above with regard to the protocol conversion and transmission limitations, a person of ordinary skill in the art understands "protocol conversion" as referring to re-encoding data.

Respectfully submitted,


DATED: May 14, 2010           By:   /s/ Keith Rutherford
                                       Michael T. Cooke
State Bar No. 04759650
Jonathan T. Suder
State Bar No. 19463350
FRIEDMAN, SUDER & COOKE
Tindall Square Warehouse No. 1
604 East 4th Street, Suite 200
Fort Worth, Texas 76102
(817) 334-0400
Fax (817) 334-0401
jts@fsclaw.com
mtc@fsclaw.com

Keith A. Rutherford
State Bar No. 17452000
R. Scott Reese
State Bar No. 24046696
Sarah R. Cabello
State Bar No. 24052877

WONG, CABELLO, LUTSCH,
  RUTHERFORD & BRUCCULERI, LLP
20333 SH 249, Suite 600
Houston, TX  77070
(832) 446-2400
Fax (832) 446-2424
krutherford@counselip.com
sreese@counselip.com
scabello@counselip.com

Eric M. Albritton
ERIC M. ALBRITTON, P.C.
P.O. Box 2649
111 West Tyler Street
Longview, TX  75601
(903) 757-8449 x204
Fax (903) 758-7397
ema@emafirm.com

ATTORNEYS FOR PLAINTIFF
INNOVATIVE GLOBAL SYSTEMS, LLC

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served today, May 14, 2010, with a copy of the foregoing **PLAINTIFF IGS' REPLY BRIEF REGARDING CLAIM CONSTRUCTION ISSUES PURSUANT TO PATENT RULE 4-5(c)** via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.


   /s/ Wayne Maydwell          
Wayne Maydwell